UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TOINDRA RAMDEO,

                 Petitioner,

    -against-

WILLIAM PHILLIPS, Superintendent
of Green Haven Correctional Facility,

                 Respondent.
----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 0 8 2006
P.M.
TIME A.M.

**MEMORANDUM AND ORDER**

04-CV-1157 (SLT)

**TOWNES, United States District Judge:**

In March 2004, petitioner, Toindra Ramdeo, a citizen of Guyana, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1997 murder conviction. Well after oral argument on this petition, but shortly after retaining counsel to assist him with a post-argument submission, petitioner twice moved for permission to amend his petition to add new grounds for granting habeas relief. For the reasons set forth below, petitioner's motions are hereby denied.

## BACKGROUND

In April 1997, petitioner was convicted of murder in the second degree under a depraved-indifference theory, N.Y. Penal L. § 125.25(2), and assault in the second degree, N.Y. Penal L. § 120.20(2), based on two separate incidents involving two separate victims. On appeal, petitioner's counsel principally argued that the trial court erred in refusing to suppress petitioner's statement to police and that the evidence was insufficient to support the assault conviction. Appellate counsel did not contest the sufficiency of the evidence relating to the murder conviction, or argue ineffective assistance of trial counsel.

On September 21, 2000, the Appellate Division, Second Department, modified the judgment of conviction to the extent of vacating petitioner's assault conviction and dismissing

that count of the indictment, but affirmed the judgment in all other respects. *People v. Ramdeo*, 277 A.D.2d 258, 719 N.Y.S.2d 252 (2d Dept. 2000). The New York Court of Appeals denied leave to appeal on May 10, 2001, *People v. Ramdeo*, 96 N.Y.2d 833, 729 N.Y.S.2d 454 (2001), and, after reconsideration, denied leave a second time on December 17, 2001. *People v. Ramdeo*, 97 N.Y.2d 687, 738 N.Y.S.2d 302 (2001).

On January 24, 2002, petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440 (hereafter, "§ 440"), in which he principally argued that his trial counsel had provided ineffective assistance. Petitioner faulted the attorney who represented him prior to trial for (1) failing to assert petitioner's rights under the Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77; (2) failing to adequately prepare for the pre-trial *Huntley* hearing by failing both to investigate and to call any witnesses other than petitioner himself; and (3) failing to adequately prepare petitioner to testify at the hearing and then failing to object to "prejudicial questions." Ramdeo's Affidavit in Support of Motion to Vacate Judgment at 32. Petitioner also faulted the attorney who represented him at trial for (1) failing to interview or to call any witnesses or to pursue a coherent strategy; (2) failing to request that the trial court charge the jury on lesser included offenses, and (3) failing to "bring to light" the violations of petitioner's rights under the Vienna Convention. *Id.* at 42. However, petitioner's § 440 motion did not argue that the evidence was insufficient to sustain his murder conviction or that trial counsel's failure to raise this point constituted ineffective assistance. Petitioner's motion was denied on March 11, 2003. *People v. Ramdeo*, Ind. No. 4521/95, slip op. (Sup. Ct. Queens Co. Mar. 11, 2003).

On June 26, 2003, petitioner filed a *pro se* petition for a writ of error coram nobis with the Appellate Division, Second Department, alleging ineffective assistance of appellate counsel. Petitioner asserted, *inter alia*, that appellate counsel had failed to argue that "there [was] no rational basis upon which a jury could have found [him] guilty of depraved mind murder beyond a reasonable doubt." Ramdeo's Affidavit in Support of Motion for a Writ of Error Coram Nobis at 19. The Appellate Division denied petitioner's application, holding that petitioner had failed to establish that he was denied the effective assistance of appellate counsel. *People v. Ramdeo*, 1 A.D.3d 537, 767 N.Y.S.2d 243 (2d Dept. 2003). On February 27, 2004, the New York Court of Appeals denied petitioner leave to appeal this decision. *People v. Ramdeo*, 1 N.Y.3d 633, 777 N.Y.S.2d 31 (2004).

On March 10, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The form petition, which petitioner completed, directed petitioner to "state every ground on which you claim that you are being held unlawfully" and to "attach a copy of [the] State Court appellate brief" if he was "raising the same grounds . . . raised on direct appeal." Petition at 4. Petitioner raised five grounds: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and three grounds regarding the admissibility of petitioner's statement to the police. The petition did not contain a statement of facts or any new arguments in support of these grounds. Indeed, rather than describe the facts supporting his two ineffective assistance claims, petitioner simply referred to pages in his affidavits in support of his § 440 motion and his petition for a writ of error coram nobis, and to pages in his replies to the People's responses to those applications. Pet. at 5.

3

On October 29, 2004, after the prosecution responded to the petition, and after petitioner filed his reply to that response, this Court heard oral argument on the petition. During that argument, this Court requested that the parties file supplemental submissions relating solely to the question of whether the trial court's determinations concerning the voluntariness of petitioner's statements to the police were entitled to deference in light of *Miller v. Fenton*, 474 U.S. 104 (1985). *See* Transcript of Oct. 29, 2005, Oral Argument at 4-6.

On December 21, 2004, petitioner retained counsel for the purpose of preparing the supplemental submission requested by the Court. In a submission dated February 25, 2005, petitioner's counsel not only addressed the issue raised at oral argument, but also sought permission to amend the petition to add the argument that "trial counsel was ineffective for failing to argue that the evidence was insufficient to support the charge of depraved-indifference murder." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated February 25, 2005, at 1. On May 4, 2005, after petitioner's application to amend the petition on this ground had been fully briefed by the parties, petitioner's counsel requested permission to add yet another, related argument to the petition: "that [petitioner's] conviction should be vacated because he is innocent of depraved-indifference murder." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated May 4, 2005, at 1.

## DISCUSSION

Although there is "[a] discrete set of Rules govern[ing] federal habeas proceedings launched by state prisoners" pursuant to 28 U.S.C. § 2254, *Mayle v. Felix*, ___U.S.___, 125 S.Ct. 2562, 2569 (2005), these rules do not contain any specific provision concerning the amendment

of habeas petitions. Rule 11 of Rules Governing Section 2254 Cases in the United States District Courts provides only that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied" to a § 2254 proceeding. Similarly, 28 U.S.C. § 2242 specifically states that a petition for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."

In light of these provisions, courts have held that Federal Rule of Civil Procedure 15 – the rule which governs the amendment of civil pleadings – governs applications to amend § 2254 habeas petitions. *See, e.g., Mayle*, 125 S.Ct. at 2569-70; *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001). Rule 15(a) provides in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, . . . within 20 days after it is served.

If a party is no longer entitled to amend his or her pleading as a matter of course, the party may amend "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a).

Rule 15(a) specifically provides that "leave shall be freely given when justice so requires." While "[t]he Supreme Court has made clear that 'this mandate is to be heeded,'" *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), district courts have discretion to deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002), or "where amendment would be futile." *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 404 (2d Cir. 2005) (citing *Van*

*Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91-92 (2d Cir. 2003)). "This discretion safeguards against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ [of habeas corpus]. . . ." *Ching*, 298 F.3d at 180.

Under Rule 15, amendments to a pleading may not be made after the statute of limitations has run unless the amendment relates back to the date of the original pleading. Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of an original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." As the Supreme Court recently noted, relation back under Rule 15(c)(2) "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 125 S.Ct. at 2572 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259, n. 29 (9th Cir. 1982)). An amended habeas petition, therefore, "does not relate back (and thereby escape [the Antiterrorism and Effective Death Penalty Act's] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*, 125 S.Ct. at 2566.

Although petitioner concedes that his motions to amend were made after the one-year limitation period expired, Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated April 11, 2004, at 2, petitioner persuasively argues that the facts underlying the proposed amendments are the same as the facts underlying one of petitioner's five grounds for granting a writ of habeas corpus. The fifth ground raised in the original petition asserts that appellate

6

counsel was ineffective for the reasons set forth in petitioner's application for a writ of error coram nobis. Pet. at 5. In that application, petitioner argued that appellate counsel had failed to argue that "there [was] no rational basis upon which a jury could have found [petitioner] guilty of depraved mind murder beyond a reasonable doubt." Ramdeo's Affidavit in Support of Motion for a Writ of Error Coram Nobis at 19. Petitioner specifically argued that "all the evidence . . . indicated that, if anything, the deceased was intentionally murdered," and cited to a case – *People v. Sanchez*, 98 N.Y.2d 373, 748 N.Y.S.2d 312 (2002) – in which the appellant, who had been convicted of depraved indifference murder, had argued (albeit unsuccessfully) "that the People's proof was consistent only with an intentional killing." *Id.*, 98 N.Y.2d at 376, 748 N.Y.S.2d at 313.

The facts which support the two grounds which petitioner seeks to add are at least of a type similar to the facts which underlie the fifth ground in the original petition. Accordingly, this Court finds that the proposed amendments relate back to the date of the original pleading. Petitioner is not, therefore, time-barred from amending his petition in these two respects.

Nonetheless, this Court concludes, in the exercise of its discretion, that it would be futile to permit petitioner to amend his petition. Petitioner concedes that the two grounds which he seeks to add to the petition are not yet exhausted. Writs of habeas corpus cannot be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Moreover, "federal district courts may not adjudicate . . . petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, ___, 125 S.Ct. 1528, 1532-33 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).

7

"The mere fact that claims are unexhausted does not make them futile," so long as a petitioner can obtain a stay of the habeas proceedings while he exhausts those claims. *Bryant v. Greiner*, No. 02 Civ. 6121 (RMB) (RLE), 2005 WL 3455789, at *1 (S.D.N.Y. Dec. 14, 2005) (report and recommendation) (citing *Clancy v. Phillips*, No. 04-CV-4343 (KMK), 2005 WL 1560485 (S.D.N.Y. July 1, 2005)). However, if this Court is not prepared to grant petitioner a stay pending his exhaustion of these two claims, it would be futile to grant leave to amend the petition. The Court would be permitting the petitioner to amend, then forcing petitioner to choose between abandoning the newly added grounds or having the mixed petition dismissed altogether.

Until recently, stays of the sort that petitioner seeks were routinely granted in this Circuit pursuant to *Zarvela v. Artuz*, 254 F.3d 374, 481 (2d Cir. 2001). However, on March 30, 2005, in *Rhines v. Weber*, *supra*, the Supreme Court imposed new restrictions with respect to the use of the "stay and abeyance" procedure. While the Supreme Court held that district courts have discretion to grant stays, it also held that "stay and abeyance should be available only in limited circumstances." *Id.*, 125 S.Ct. at 1535. Specifically, the Supreme Court held that a stay should be granted only if a petitioner can show "good cause" for failing to exhaust all available State remedies earlier. *Id.*

The *Rhines* Court did not define the term, "good cause." In the ten months since *Rhines* was decided, the Supreme Court has addressed the issue of what constitutes "good cause" only once. In *Pace v. DiGuglielmo*, ___U.S.___, 125 S.Ct. 1807 (2005), the petitioner had his habeas petition dismissed as time-barred after the Third Circuit ruled that his untimely filed State post-

conviction petition was not a "properly filed application for State post-conviction or other collateral review," and therefore did not toll the AEDPA's limitation period under 28 U.S.C. § 2244(d)(2). In affirming the Third Circuit, the Supreme Court addressed the petitioner's claim that a petitioner "trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never properly filed, and thus that his federal habeas petition is time barred." *Id.* at 1813 (internal quotation marks and citation to record omitted). The Supreme Court stated:

> A prisoner seeking state postconviction relief might avoid this predicament . . . by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber,* . . . 125 S.Ct. [at] 1531 . . . . A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. *Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

*Id.* at 1813-14.

No Circuit Court of Appeals has yet opined on the meaning of "good cause." However, the majority of those lower courts which have addressed the issue at length have analogized the "good cause" requirement to the requirement that a habeas petitioner demonstrate "cause" to excuse other types of procedural defaults. *See, e.g., Hernandez v. Sullivan,* 397 F.Supp.2d 1205, 1206-07 (C.D.Cal. 2005) (deeming it "appropriate to look to procedural default case law for guidance in determining whether Petitioner has demonstrated the requisite 'good cause'");

9

*Johnson v. Sullivan*, No. CV04-7923 (ABC) (MLG), 2006 WL 37037, at *3 (C.D.Cal. Jan. 4, 2006) (report and recommendation following *Hernandez*); *Pierce v. Hurley*, No. 05-CV-392, 2006 WL 143717, at *8 (S.D.Ohio Jan. 18, 2006) (report and recommendation following *Hernandez*); *Carter v. Friel*, No. 02 CV 326 TS, 2006 WL 208872, at *3 (D.Utah Jan. 26, 2006) (disagreeing "with the position that 'good cause' is defined by the Supreme Court in *Rhines* as more liberal or expansive than the showing needed for 'cause' to excuse procedural default in federal habeas case law"). These courts have reasoned that "good cause," like "cause" in the procedural default context, must arise "from an objective factor external to the petitioner which cannot fairly be attributed to him or her." *See, e.g., Hernandez*, 397 F.Supp.2d at 1207 (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)); *Johnson*, 2006 WL 37037, at *3 (same); *Pierce*, 2006 WL 143717, at *8 (same).

Even in cases which expressly reject the notion that "good cause" is analogous to "cause" for a procedural default, *see Rhines v. Weber*, No. 00-5020-KES, 2005 WL 3466015, at *4 (D.S.D. Dec. 19, 2005), or which implicitly reject *Hernandez* and progeny by discussing and failing to follow those cases, *see Fernandez v. Artuz*, No. 00 Civ. 7601 (KMW) (AJP), 2006 WL 121943 (S.D.N.Y. Jan. 18, 2006) (report and recommendation of Peck, M.J.), the "good cause" has arisen from external factors, not petitioner's own decisions. For example, *Rhines*, 2005 WL 3466015, is one of several cases holding that the alleged ineffective assistance of counsel at post-conviction proceedings can constitute "good cause." *Id.* at *3 (citing cases, including *Ramchair v. Conway*, No. 04-CV-4241 (JG), 2005 WL 2786975 (E.D.N.Y. Oct. 26, 2005)). Similarly, in *Fernandez*, 2006 WL 121943, the Court found "good cause" where a petitioner was forced to

seek a stay only because his § 440 motion – itself based on newly discovered evidence – had been greatly delayed "by the prosecution and other circumstances beyond [petitioner's] control." *Id.* at *7.

Thus, regardless of whether courts analogize "good cause" to "cause" for procedural defaults, most of the courts which have thus far engaged in an in-depth analysis of the issue have required that "good cause" arise from something external, and not fairly attributable, to the petitioner. Indeed, at least one case in this Circuit has expressly held that a petitioner's own tactical decisions cannot constitute good cause. In *Knight v. Phillips*, Nos. 05-CV-2749 (NG) and 05-CV-2758 (NG), slip op. (Jan. 18, 2006), the petitioner deliberately waited for 13 months before filing his State post-conviction motions because a prison law clerk had promised to assist him. The *Knight* Court recognized that the delay was due to "reasons beyond [the petitioner's] control," but nonetheless held that the petitioner's tactical decision to wait for legal assistance did not "constitute 'good cause' for petitioner's failure to file his State claims earlier." *Id.* at 3. The Court observed:

> Such a broad construction of the term 'good cause' would greatly undermine the AEDPA's 'twin purposes' by 'allowing . . . petitioner to delay the resolution of the federal proceedings' and by 'decreasing . . . petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition[s]."

*Id.* (quoting *Rhines*, 125 S.Ct. at 1534).

In this case, petitioner essentially argues that a *pro se* petitioner's inadvertent failure to exhaust an issue in State court should be sufficient to constitute "good cause." Petitioner observes that three justices – Stevens, Ginsburg and Breyer, JJ. – who concurred in the majority

11

opinion in *Rhines* did so "on the understanding that . . . 'good cause' . . . is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner." *Rhines*, 125 S.Ct. at 1536 (internal quotations and citations omitted). Petitioner further notes that he raised the legal insufficiency claim in his application for a writ of error coram nobis, and did not raise it in his prior § 440 motion only because, as a *pro se* litigant, he failed to appreciate "that his trial lawyer had erred in not sufficiently setting out his objection." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated April 11, 2005, at 6-7.

However, petitioner does not allege, or even suggest, that there exists an external cause for his delay in exhausting the claims he now seeks to raise. Rather, he tacitly admits that the failure to exhaust is attributable to his own ignorance of the law, and was therefore inadvertent and entirely in good faith.

In light of the authorities discussed above, this Court is compelled to conclude that the petitioner's showing is insufficient to make out "good cause." If this Court were to adopt petitioner's argument, it would essentially endorse a standard which would eviscerate *Rhines* and undermine one of the AEDPA's "twin purposes" by greatly "decreasing a *pro se* petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Petitioner's argument ignores the fact that Justices Ginsburg and Breyer not only joined in Justice Stewart's concurrence, but also joined in Justice Souter's concurring opinion urging that the Court not condition a stay-and-abeyance order on a showing of "'good cause' for delay," but rather "simply hold the order unavailable on a demonstration of 'intentionally dilatory litigation tactics.'" *Rhines*, 125 S.Ct. at 1536. That approach was rejected by the *Rhines* majority, which thereby

12

implied that merely showing that the failure to exhaust was due to a petitioner's inadvertent, good-faith omission would be insufficient to obtain a stay. Since most habeas petitions are filed by *pro se* litigants, adoption of an "inadvertent, good-faith omission" standard would drive an enormous hole through *Rhines* and the AEDPA. Much as this Court sympathizes with petitioner's plight, the principles of *stare decisis* and adherence to legislative intent militate against adopting such a broad definition of "good cause."

Since this Court finds that petitioner has not demonstrated "good cause" for granting a stay of the instant habeas proceedings, it would be futile to grant him leave to amend his petition to add two unexhausted claims. Accordingly, this Court, in the exercise of its discretion, denies petitioner's motions to amend his habeas petition to add new grounds for granting habeas relief.

## CONCLUSION

For the reasons stated above, petitioner's motions to amend his petition for a writ of habeas corpus are DENIED.

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
February 7, 2006